HALL *et al. v.* MOFFETT *et al.*

No. 9308.   JULY 11, 1933.

*Lester F. Watson* and *L. E. Bracewell,* for plaintiffs in error.
*Blackshear & Blackshear,* contra.

RUSSELL, C. J.   A petition was brought by Hall and others, alleging themselves to be residents and real-estate owners of the city of Dublin, against H. R. Moffett, H. H. Dudley, and the City of Dublin, seeking injunction to prevent Moffett and Dudley from using a described tract of land in the city as a private cemetery, and the city authorities from granting them authority to do so; alleging as follows:   The purpose of Moffett and Dudley in the operation of the cemetery is private gain in which the city will have no in-

terest, but the city is threatening to grant them permission to operate said cemetery. No ordinance has been passed by the authorities of the city granting such authority, and they have no authority to so do, as the city code, § 496, expressly prohibits it, as follows: "Any person who inters the dead in any of the church yards or private burial grounds of the city shall, upon conviction, be punished as provided in section 165 of this code." Moffett and Dudley have already, without authority of law, buried two dead bodies on said tract of land and are threatening to bury more. The mayor and four members of council signed a permit for one of the bodies to be buried, which permit was illegal for the reason that there had never been passed any ordinance as a basis for said permit, nor has said matter been referred to the cemetery committee of the city as provided by law, and that committee has never investigated and made recommendations to the mayor and council as provided in section 103 of the city code. There is no public necessity for the opening of said private cemetery, as the City of Dublin now owns a tract of land designated as a negro cemetery, which is sufficient for such purpose for years to come, which has already been paid for by the taxpayers, and the city charges only a nominal sum for each lot sold, which goes to the city treasury. The operation of said private cemetery will damage the taxpayers of said city, as the present cemetery owned by the city will be worthless. The opening of such private cemetery will be injurious to petitioners and others, as they will be forced to continually gaze upon a private cemetery from their homes, and it will greatly depreciate the value of their property adjacent to said cemetery, which damage to their property and sense of pride in their community will be irreparable. They have no adequate remedy at law, and so far have been denied the right of a hearing before the city authorities, and have used all diligence and pursued every remedy open to them by filing with the clerk of the city council a protest in the nature of a petition signed by 77 citizens; and yet defendants are proceeding to bury dead bodies on said tract of land. Petitioners pray that the defendants be enjoined from doing any of the acts complained of. Injunction should be granted in order to prevent a multiplicity of suits.

The defendants demurred and answered. The court sustained the demurrers and dismissed the action, and the plaintiffs excepted.

In the petition it is stated, as one of the reasons why the defend-

ants should not be allowed to open the cemetery in question, that the City of Dublin already has a "negro cemetery across Hungry and Hardship Creek, in which there is ample room for all the colored people of Dublin to bury their dead for years to come;" and that as the city has lots to sell in Hungry and Hardship Cemetery, the establishment of an additional cemetery will bring it into competition with the city in the sale of burial lots. We can see no reason when even a negro should not prefer rest after death from both hunger and hardship; but certainly the fact that the city may own a cemetery in which it sells lots to colored people to bury their dead would not, in law or equity, be a sufficient reason to allow the petitioners, as private individuals, to object to the municipal authorities of the City of Dublin locating additional cemeteries, or to interfere in the exercise of the discretion with which the municipal authorities are clothed, unless the petitioners themselves are to be subjected to a nuisance from which irreparable injury will necessarily result. The question of the location of cemeteries has several times been dealt with by this court. One of the chief grounds upon which injunction against the establishment of a burial ground has been granted at the instance of owners of adjoining tracts of land is that where either the flow of water from the burying-ground may contaminate the water of adjoining premises, or the air may become contaminated. There is no charge in the petition in this case that the soil is of such nature, or the flow of water of such character, that there will be any pollution of adjoining premises. To state, as is averred in the petition, "that if defendants are permitted to open up a private cemetery on the tract of land at the place where they are seeking to do, that it will be detrimental and injurious to the health, happiness, peace, and contentment of your petitioners as well as a great many others, . . that it will greatly depreciate the value of the property adjacent to said private cemetery," that "the injury and damage to petitioners' property and their sense of pride in their community will be irreparable, and can not be compensated in any kind of an action in a court of law," is a mere recital of conclusions of the pleader, without stating any fact upon which the court might predicate a similar conclusion. The allegations relating to the conduct of the mayor and council of the City of Dublin are immaterial at this time, because the court dissolved the temporary restraining order as to the mayor and council, and,

as has frequently been held by this court, a judgment dissolving an interlocutory restraining order is not the subject of review. It is true, as stated in the bill of exceptions, that at one stage of the proceeding the court granted an interlocutory injunction against Dudley and Moffett, but the court later and finally dismissed the petition of the plaintiffs. This rendered the previous grant of the interlocutory injunction nugatory; and so the only question presented by the bill of exceptions is whether the judge erred in dismissing the petition, for this worked a final disposition of the case. We are of the opinion that the judgment dismissing the petition was correct. The principles stated in the headnotes are deemed to be applicable to the facts as set forth in the statement, and require no further elaboration.

*Judgment affirmed. All the Justices concur.*